WARNER (UNITED STATES v.).  See Cases Nos. 16,642, 16,643.

WARR (UNITED STATES v.).  See Case No. 16,644.

WARRAN (SOUTH AMERICA, The, v.). See Case No. 13,180a.

## Case No. 17,191.

### In re WARREN.

[2 Ware (Dav. 320) 322; [1] 5 N. Y. Leg. Obs. 327.]

District Court, D. Maine.  Sept., 1847.

WHAT CONSTITUTES A PARTNERSHIP—BUYING AND SELLING LANDS—MAKING NEGOTIABLE PAPER—DISSOLUTION—FIRM AND INDIVIDUAL CREDITORS—BANKRUPTCY.

1. A partnership may exist in a single as well as in a series of transactions.  If there is a joint purchase, with a view to a joint sale and

[1] [Reported by Edward H. Davies, Esq.]

a communion of profit and loss, this will constitute a partnership.

2. There may be a partnership in buying and selling lands as well as merchandise; and so far as third persons are concerned, it may be proved by the same evidence, though, as between the partners, it may be necessary to prove the partnership by written evidence.

3. Generally, when a member of a firm makes a note, or draws a bill, in his own name, though it is known to be on the partnership account, the firm will not be bound.

4. But this rule does not prevail where there is a secret partner unknown to the creditor.

5. Nor when one of a firm has been in the habit of drawing and indorsing bills in his own name for the use of the firm, and the other partners have treated them as binding the firm.

6. Where two persons, who are partners, unite in drawing a bill or making a note though they sign their several names and not that of the firm, if it is in fact on the partnership account, it seems that it will be treated throughout as a partnership security.

[Cited in brief in Ex parte Nason, 70 Me. 369.]

7. On the dissolution of a partnership, in cases of insolvency, the rule of equity is that the partnership creditors have a preferred claim against the assets of the firm, over the separate creditors of the partners, and the separate creditors have a like preference over the partnership creditors, against the separate assets.

8. This rule of equity is established as the rule of distribution, by the 14th section of the bankrupt law [of 1841 (5 Stat. 448)].

[Cited in Ex parte First Nat. Bank, 70 Me. 379.]

In this case, the bankrupt petitioned both as an individual and as a partner in the late firm of Warren & Brown. The firm and both partners were insolvent. The separate assets of [Henry] Warren were considerably more than the partnership assets, and a question arose between the different classes of creditors, whether the partnership, which was originally entered into in the business of attorneys and counsellors at law, extended to their speculations in lands, and if so, by what criterion the debts, which originated in land transactions, should be distinguished from the separate debts.

The case was argued by Jewett & Hobbs, for the separate creditors of Warren, and by Adams & Rowe, for several creditors, whose claims originated in the land transactions of Warren & Brown, and who, it was contended on the other side, were partnership creditors.

WARE, District Judge. In the spring of 1834, Warren and Brown formed a partnership for carrying on the business of attorneys and counselors at law. There were no written articles of partnership, but the understanding between them was, that it was to be confined to their professional business. Without any additional agreement, they began soon after buying and selling timberlands. There was no formal agreement as to the terms on which this business was to be carried on, but they do not appear originally to have contemplated a general partnership in land transactions, and probably did not anticipate the extent to which their speculations were eventually carried. It was understood between them that either might purchase, but that the other was not bound to take a share in the purchase, without his own consent to each particular purchase, but when both parties assented to the purchase, they were to share in equal portions in the profit or loss. According to the usage of the time, they sometimes purchased and sold lands directly, and sometimes preëmption bonds or contracts for the sale of lands. This land business was commenced in the fall of 1834, and was continued on an extensive scale through the ensuing winter and summer, until the period of speculation was over. Though they did not contemplate originally a general partnership, and each was considered at liberty to purchase and sell on his own private account, there were in fact no timber-lands purchased by either, except what were taken on joint account. When they commenced the business, they gave their joint notes, signing separately, and not the partnership name, but more frequently the securities, for the convenience of negotiation, were in the form of bills of exchange, drawn by one and accepted by the other. It was not long, however, before the name of the firm was freely used in these land securities; at first, it seems, by Brown, but not objected to by Warren. This trade in timber-lands appears to have led to the lumbering business, in which they seem to have been engaged in the same way without any special partnership agreement. Whatever may have been the private intentions of the parties, it seems that they must have soon come to be considered, and dealt with by others, as a firm. A list of notes or bills of exchange is produced, taken from the books of Warren, more than sixty in number, commencing with the spring of 1836, and continued to the fall of 1839, growing out of land and lumber transactions, in which the name of the firm is used as promisor, drawer, acceptor, and indorser for various amounts, from small sums up to two, three, and five thousand dollars, and in the whole exceeding $50,000. It is quite impossible that such an amount of business, continued for such a length of time, could have been done in the partnership name, without its being generally understood that a partnership in the business existed. Third persons must have dealt with them and given them credit on that understanding.

The earliest land transaction in which they were engaged was with Thacher and Parker. This was an obligation of Thacher and Parker, to convey to them 12,040 acres of land at the price of two dollars an acre, part to be paid in cash, and part on credit of one, two, and three years, provided satisfactory security was given in sixty days. This obligation is in the handwriting of Warren, and the obligation runs to them in their partnership name; so that from the very commencement of their speculations, whatever may have been the private intentions of the parties, the business was transacted in a way that must have led those

who dealt with them to suppose that a partnership existed, and that the trade was on partnership account. Between the parties themselves, in the earlier part of their speculations, each purchase was treated as a separate and independent transaction, and, when the land was sold, the parties settled it and divided the profits and loss. But this was a private affair between themselves, and not known to third persons with whom they dealt.

A partnership may exist in a single transaction as well as in a series. Story, Partn. § 21; Pothier, Contrat de Societé, No. 54; 3 Kent, Comm. 30. If there is a joint purchase, with a view to a joint sale and a communion of profit and loss, it is a partnership trade, although it is confined to a single thing. Dig. 17, 2, 5. Now every purchase was made with a view to a joint sale on joint account, so that, without any general agreement for a partnership, they were, in law, partners in every purchase, and, by the habit of buying and selling in this way, they held themselves out to the public as general partners in the business. There may be a partnership, in buying and selling lands, as well as in ordinary commercial business. Dudley v. Littlefield, 21 Me. 418; Story, Partn. § 23. And so far as the rights of third persons are involved, it is not perceived why it may not be proved by the same evidence. To give full effect in law to the partnership, between the partners themselves, it seems to be necessary that the articles be in writing. For if the partnership is by parol only, and one of the partners makes a purchase in his own name, but intended for the benefit of the firm, the other, on the mere ground of the partnership, that being by parol, cannot take advantage of the contract, for, if he could, he would acquire an interest in lands by parol, directly in opposition to the statute of frauds. Smith v. Burnham [Case No. 13,019]. But this is only between themselves. Third persons, dealing with them, are not affected by any private arrangements between the partners unknown to them. If they hold themselves out to the public as partners, those who deal with them have a right so to regard them, and they will be bound as partners.

· It appears to me that there is abundant evidence to prove a partnership in their land speculations, as to third persons. Their very first contract was in the name of the firm, and every succeeding one, whether made in form in the name of the firm or not, was adopted by them and taken on joint account. Though the securities they gave in their earlier transactions were not given in the partnership name, yet when they gave their joint note, or one drew a bill and the other accepted it, it was as well understood to be a partnership transaction, as if the name of the firm had been used. But the business having been transacted in this way, a question arises of some difficulty, whether, on the bankruptcy or insolvency of the partners, these debts are to be placed to the partnership account, or are a charge on the separate estates of the partners. By the general rule of law, if one member of a firm makes his separate note, or draws a bill of exchange in his own name, he will be bound, and not the firm, although it is on account and for the benefit of the partnership. Story, Partn. §§ 124, 127. The general reason by which this decision is vindicated is, that the creditor, by accepting the separate security of the individual partner, is supposed to have elected to take that in preference to the security of the firm. As the decision proceeds on the ground of a supposed choice in the creditor, it does not hold in cases where it appears that no choice could have been made; and consequently where there is a dormant partner, and not known to the creditor, if the contract is for the benefit of the partnership, he will be bound, although he is not named. And for the same reason, where one of the partners has been in the habit of drawing and indorsing bills and notes in his own name, · for the use and benefit of the firm, if it appears that the other partners have treated such signature as binding on the firm, the name of the partner will be held as standing for that of the firm and be binding upon them. So it was ruled in the case of South Carolina Bank v. Case, 8 Barn. & C. 427; Story, Partn. § 142. The creditor will be held as trusting not the partner alone but the firm. It is not therefore universally true. when a contract appears on its face to be the separate contract of one partner, that it will not be binding on the firm if it is understood to be, and is in fact, for their benefit The presumption that arises from the form of the security, that the separate name of the partner was taken from choice, may be overcome by proof that no such election was made. The true and more general principle seems to be, that when the intention of the contracting parties is that the firm shall be bound, and the contract is within the scope of the partnership business, the contract will bind the firm in whatever form it may be made. But when a partnership consists of two persons, and they both sign a note or bill with their individual names and not by the name of the firm, or one draws a bill and the other accepts it, if it be in fact for a joint or partnership object. there would seem to be strong reasons for putting it. in the marshaling of securities, to the partnership account. Indeed, it has been held that if two persons, who are not partners, unite in drawing a bill of exchange, they are to be considered as partners in that bill. It is said that the public are to infer their relation to each other from the face of the paper. 3 Kent, Comm. 30; Carrick v. Vickery, 2 Doug. 653, note. And a like decision has been made on a joint and several promissory note, so that a demand or notice to one is a demand or notice to both, though perhaps the weight of authority is, where the parties are not in fact partners, the other way. Story, Prom. Notes, § 239, note; Story, Bills, § 197. But where two persons, who are partners, unite in drawing a bill or

making a note, though they sign their several names and not that of the firm, if it is in fact for partnership purposes, I am not aware that it has been decided that such a note or bill is not to be treated throughout as a partnership security; that a demand or notice to one is not a demand or notice to both, or that a creditor holding such a security would not have, in the administration of assets, a preference against the joint estate, over the separate creditors of the partners. The general language of elementary writers leads to the conclusion, that such a note or bill is to be treated for all purposes as strictly a partnership security. The reason for so doing, in the marshaling of assets and securities, is certainly very strong. The fruits of the contract have gone to increase the social fund, and there is a natural equity in allowing the creditor a preference against that fund which his contract has contributed to augment.

On the dissolution of a partnership, in cases of insolvency, the rule in equity is, that the partnership creditors have a preferred claim against the partnership assets, over the separate creditors of the partners, and the separate creditors of the individual partners have a like preference over the partnership creditors, against the separate assets. The principle is, that each class of creditors is thrown on that fund to which he has given credit, and which he has contributed to enrich, and neither class can come on the other estate, until the appropriate creditors of that estate have been fully satisfied. 3 Kent, Comm. 64, 65, note. The same general rule holds in bankruptcy. In England it is indeed, in bankruptcy, qualified by some exceptions partly founded on technical reasoning, and partly on some supposed convenience, but certainly not standing on any plain and intelligible rule of equity or justice. Story, Partn. §§ 377, 381; Eden, Bankr. Law, 170, 175.

The rule of distribution, established in the general jurisprudence of courts of equity, has been incorporated in express terms into our bankrupt law. The 14th section directs that after the expenses and disbursements of the assignee are fully paid, the whole of which are a charge on the whole property, "the net proceeds of the joint estate shall be appropriated to pay the creditors of the company, and the net proceeds of the separate estate of each partner shall be appropriated to his separate creditors; and the balance, if any, of each estate, after paying the debts primarily chargeable upon it, shall be carried to the other estate." The language of the law is clear and explicit, and the only question left is, which are partnership and which separate creditors? I have already expressed my opinion that the speculations in land were, from the beginning, on partnership account, and in whatever form the securities were given, the presumption is that credit was given to the firm. That presumption, however, may be overcome by proof that credit was in fact given to the individual partners.